# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

    Plaintiff-Respondent,

vs.                                  **CIVIL NO. 00-1424 BB/DJS**
                                              Criminal No. 98-136-BB

**JOSE G. DEL REAL-ORDONES,**

    Defendant-Movant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

1. This a proceeding on a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. §2255. Movant is incarcerated at the Federal Correctional Institution at Seagoville, Texas, as a result of his conviction for possessing with intent to distribute a quantity of methamphetamine. For that crime, Movant is serving a sentence of one-hundred and twenty-one months incarceration. The facts as developed at trial reveal that the Movant attempted to travel by train from Los Angeles to Dodge City, Kansas. Upon the train's arrival in Albuquerque, New Mexico Movant was approached by a DEA agent named Michael Mans. That contact lead to the discovery of a sizeable

---

[1] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten-day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

quantity of methamphetamine hidden in a detergent box in luggage claimed by the Movant. The record reveals that Movant proceeded with a defense based upon a theory of lack of knowledge concerning the presence of the contraband, coupled with a spirit of cooperation with law enforcement on his part, from the beginning of his prosecution.

2. On June 13, 2001, this Court entered proposed findings and a recommended disposition that Movant's §2255 challenge be denied on the ground that his consent to the search of his luggage generally foreclosed any Fourth Amendment challenge and that his belated claim that his counsel forced him to falsify his testimony regarding consent was incredible. In those proposed findings, the Court noted that Movant received a downward departure at sentencing based upon his cooperative conduct. The District Judge adopted the proposed findings and recommended disposition on July 20, 2001. However, the Tenth Circuit Court of Appeals granted a certificate of appealability and remanded this matter for this Court to consider whether Movant's counsel was ineffective for failing to file a motion to suppress and to consider the claim that Movant was illegally detained and his consent to the search was therefor involuntary. United States v. Del Real-Ordones, 43 Fed.Appx. 229, 2002 WL 1614199 (10th Cir. July 23, 2002) (unpublished disposition). Accordingly, on November 14 and 15, 2002, this Court held an evidentiary hearing regarding whether Movant was illegally detained by Drug Enforcement Agency agent Michael Mans.

3. At the evidentiary hearing, testimony was taken from Benjamin Gonzales, who was Movant's counsel at trial, Movant, and DEA Agent Michael Mans. Agent Mans' testimony was consistent with his testimony at trial. At trial, Mans testified on direct examination that his first encounter resulting in contact with Movant was at the bottom of the stairs leading from the upper train platform to the parking lot area of the station at Albuquerque. Transcript of 5/18/98 Trial, Volume 1, pp 87-88. Mans asked Movant for his train ticket, which Movant did not have on him.

Id. at 88. Movant offered to get the ticket, went back to his sleeper car with Mans, got his ticket from within the car, and showed it to Mans. Id. at 88-89. At that point, Movant returned his ticket to his sleeper, closed the door, and left the train without any interference by Mans. Id. at 89. Movant ordered some food from a vendor in the parking lot and, after he had eaten, Mans approached him again and asked him for permission to search any luggage in his room, which Movant gave. Id. at 90. Mans estimated the total time of the encounter, not counting the time while Movant was eating, as ten minutes from contact to discovery of the drugs and arrest. Transcript of 5/18/98 Trial, Volume 1, p. 140 (cross-examination of Mans). As noted, at the November 15, 2002 evidentiary hearing, Agent Mans' testimony was consistent with that description of events. Further, this description of events is consistent with a tape recording Agent Mans made of the encounter which was admitted into evidence at trial.

     5. The government bears the burden of proving voluntary consent to a search. United States v. Orrego-Fernandez, 78 F.3d 1497, 1505 (10th Cir. 1996). In determining voluntariness, the Court considers whether the consent was "unequivocal and specific and freely and intelligently given and whether it was given without duress or coercion." United States v. Mendez, 118 F.3d 1426, 1432 (10th Cir. 1997). In considering those factors, the Court examines the totality of the circumstances to determine whether consent to a search was voluntary. United States v. Hernandez, 93 F.3d 1493, 1500 (10th Cir. 1996).

     6. In United States v. Drayton, 122 S.Ct. 2205 (2002), Justice Kennedy wrote for the majority that

> Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen. See, e.g., Florida v. Royer, 460 U.S. 491, 497 (1983) (plurality opinion); see id., at 523, n. 3,(Rehnquist, J., dissenting); Florida v.

3

> <u>Rodriguez</u>, 469 U.S. 1, 5-6, (1984) (*per curiam*) (holding that such interactions in airports are "the sort of consensual encounter[s] that implicat[e] no Fourth Amendment interest"). Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search luggage--provided they do not induce cooperation by coercive means. See <u>Florida v. Bostick</u>, 501 U.S. 429, 434-435 (1991) (citations omitted). If a reasonable person would feel free to terminate the encounter, then he or she has not been seized."

<u>Drayton</u>, 122 S.Ct. at 2110. Further, in <u>Drayton</u>, the Supreme Court suggests that drug interdiction interviews on a bus will pass constitutional muster if "[t]here was no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, no command, not even an authoritative tone of voice." Id . at 2112.

7. The facts of this case present exactly the sort of situation described in the quote referenced from <u>Drayton</u>, in that the DEA agent did not apply any force, brandish a weapon, issue any commands, or use an authoritative tone of voice when dealing with Movant. At trial, Movant testified on direct examination that he did not realize that Mans was with DEA when he first approached, that he wasn't afraid or nervous, and that he saw no reason to answer the questions posed by the officer. Transcript of 5/18/98 Trial, Volume 1, pp. 210-211. After Mans' initial conversation with Movant, Movant left the train and obtained food from an area with open access to city streets while the agent stood with another plain-clothes officer some fifty yards away in an area with over one hundred people in it. Transcript of November 15, 2002 Evidentiary Hearing, Testimony of Michael Mans, pp. 61, 77-78, 88. Movant was not aware of the agent while he was eating his food outside the train. Transcript of November 15, 2002 Evidentiary Hearing, Testimony of Jose G. Del Real-Ordones, pp. 22. The transcript of the tape recorded encounter reveals no commands by the agent and no refusal to consent by Movant.

8. As reiterated in <u>Drayton</u>, whether an encounter is a detention or a consensual encounter

4

depends on whether the police conduct would have conveyed to a reasonable person that he or she was not free to decline the officer's requests or otherwise terminate the encounter. Florida v. Bostick, 501 U.S. 429, 439 (1991); United States v. Little, 60 F.3d 708, 711 (10th Cir.1995). A person is seized only when that person has an objective reason to believe he or she is not free to end the conversation with the officer and proceed on his or her way. United States v. Werking, 915 F.2d 1404, 1408 (10th Cir.1990). Proof of the person's knowledge of their right to refuse consent is not a necessary prerequisite to demonstrating that consent is voluntary. United States v. Pena-Sarabia, 292 F.3d 983, 986 (10th Cir. 2002). Further, no credible evidence of physical mistreatment, use of violence, threats, promises or inducements, or deception on the part of the DEA agent was presented at the evidentiary hearing or trial. See id. (Courts should consider those factors and the totality of the circumstance when determining whether consent to search is voluntary). Although Movant was not informed of his right to refuse consent, no reasonable person would have felt that he was not free to decline the agent's requests under the circumstances of the encounter recorded on tape, described at trial and further illuminated by Agent Mans at the evidentiary hearing.

9. Movant testified at the evidentiary hearing that his attorney coerced him into describing a consensual encounter with the DEA agent. Transcript of November 15, 2002 Evidentiary Hearing, Testimony of Jose G. Del Real-Ordones, pp. 18-19, 39-42. While this testimony has no bearing on the objective question of whether a reasonable person would have felt free to decline the request to provide his train ticket and, later, to search his luggage, it does affect Movant's claim that he was afforded ineffective assistance of counsel. Also, Movant essentially recanted portions of the testimony given at his two criminal trials. Transcript of November 15, 2002 Evidentiary Hearing, Testimony of Jose G. Del Real-Ordones, pp. 43-45.

10. Petitioner's trial counsel, Benjamin Gonzales, testified as to the events that Movant had described to him regarding Movant's encounter with Agent Mans and his arrest. Transcript of November 14, 2002 Evidentiary Hearing, Testimony of Benjamin Gonzales, pp.39-40, 74-75. Gonzales' conclusion that no circumstances demonstrating coercion by the law enforcement officers tainted Movant's consent to search is consistent with the conclusion of this Court. Moreover, to the extent that there is a conflict between Movant's testimony at the evidentiary hearing and his testimony at the two criminal trials and the testimony of Agent Mans and Mr. Gonzales, as well as the tape recording of the encounter, the Court credits the latter descriptions of the events.

11. To succeed on this motion to vacate on the basis of a claim of ineffective assistance of counsel, Movant must meet the two pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, he must "show that counsel's representation fell below an objective standard reasonableness" Strickland, 466 U.S. at 688. Secondly, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Id. at 694; See also, Hatch v. Oklahoma, 58 F.2d 1447 (10th Cir. 1995). An attorney who makes a choice to channel his investigative efforts into fewer than all possible defenses is not ineffective as long as his choices are based on reasonable assumptions. See, United States v. Glick, 710 F.2d 639 (10th Cir.) cert denied, 465 U.S. 1005 (1984). Movant can meet neither prong of the Strickland test because no valid issue existed to base a motion to suppress upon and because any such motion would have been denied.

**RECOMMENDED DISPOSITION:**

That the §2255 motion be dismissed with prejudice.

                                                               _____
                                                               **DON J. SVET**
                                                               **UNITED STATES MAGISTRATE JUDGE**